IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| CHRISTOPHER D. SMITH, *et al.*, | ) | CASE NO.  5:05CV2069 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge John R. Adams |
| | ) | |
| JONATHAN SMITH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OF OPINION |


On November 4, 2005, Defendants Canton Township Board of Trustees, Jonathan Smith

("J. Smith"), Cyle Wright, and Scott McKibben jointly filed a Combined Motion To Dismiss and

Motion For Partial Summary Judgment pursuant to Fed. R. Civ. P. 12(b) and 56(b) (Docket No.

39).  Plaintiffs Christopher  D. Smith ("C. Smith") and Lorie Deem-Rockstroh oppose the

motion and have filed a Supplemental Motion For Additional Discovery pursuant to Fed. R. Civ.

P. 56(f) (Docket No. 60).  The parties have fully briefed the issues.

For the following reasons, both motions are GRANTED IN PART and DENIED IN

PART.

I.  FACTS

The Plaintiffs are husband and wife who, during the relevant time period, were employed

by Canton Township.  C. Smith was a full-time firefighter, and Deem-Rockstroh was a part-time grant writer.  Deem-Rockstroh also was a supervisor and employee for Tri-Division Ambulance and Ambulance Associates, ambulance services that operated within Canton Township pursuant to mutual aid agreements.  (Complaint at ¶¶ 1-3.)

During the relevant time period, Defendants J. Smith, Wright, and McKibben were employees of the Canton Township fire department.  J. Smith was the part-time deputy fire chief, Wright was the chief for one of the fire department's stations, and McKibben was the fire chief.  Defendant Canton Township Board of Trustees (the "Board of Trustees") comprises a group of elected officials which constitutes the governing body for Canton Township. (Complaint at ¶¶ 4-6, 9.)

The immense Complaint is seventy-five pages and 507 paragraphs.  A summary of the relevant allegations is as follows.  In April of 2004, Defendant J. Smith was the part-time deputy chief of the Canton Township fire department.  After losing other employment, J. Smith solicited Defendant McKibben, the fire chief, to alter his status from part-time to full-time.  The Plaintiffs opposed on the ground that they believed J. Smith to be unqualified, and that employing a full-time deputy chief was a waste of tax-payer money.  (Complaint at ¶¶ 19, 22-35.)

The Plaintiffs gathered petition signatures from other township firefighters who opposed J. Smith's appointment to full-time deputy chief.  (Complaint at ¶¶ 36-37.)  On April 22, 2004, Deem-Rockstroh sent a letter to the Board of Trustees expressing her opposition, and on April 27, 2004, she spoke against the appointment at a public meeting.  On April 29, 2004, C. Smith, on behalf of the firefighters' union, presented the petition to the Board of Trustees and otherwise expressed his opposition to the appointment.  On or about May 12, 2004, the Board of Trustees

-2-

denied McKibben's request to elevate J. Smith to full-time deputy chief. (Complaint at ¶¶ 39-45.)

Through much of the remainder of the Complaint, the Plaintiffs accuse the Defendants of engaging in a smear campaign against them in retaliation for their successful opposition to J. Smith's appointment. Deem-Rockstroh alleges that the Defendants made false statements to her employers regarding her character and fitness. Such statements allegedly resulted in termination from her position as a township grant writer, and so undermined her position in the ambulance services that she was forced to resign.

Plaintiff C. Smith alleges that he was subjected to what amounts to a "sham" disciplinary proceeding arising out of an incident that occurred on August 14, 2004. On that day, the wife of a township trustee fell unconscious and died within days. C. Smith was charged with not promptly and properly responding to a 911 call, charges which he denied. He was subjected to disciplinary proceedings, which he alleges were essentially rigged by the Defendants, who provided false information and limited his opportunity to defend against the charges. The disciplinary proceedings ultimately resulted in a one-shift suspension. (See Complaint at ¶ 214 regarding the length of the suspension.)

The Plaintiffs also allege that numerous false statements and other false information were provided to various media outlets. As a result, news stories, which the Plaintiffs allege are false and defamatory, appeared in local television and print media.

On August 25, 2005, the Plaintiffs filed their Complaint asserting seventeen counts under federal and state law. Counts One, Two, and Three, the federal claims, are at issue in the current motions. Count One asserts that these Defendants conspired to deprive the Plaintiffs of their

constitutional rights in violation of 42 U.S.C. § 1985.  Count Two asserts that pursuant to 42

U.S.C. § 1983, these Defendants deprived the Plaintiffs of their First Amendment right to free

speech by retaliating against the Plaintiffs for expressing their opposition to J. Smith's

appointment.  Count Three asserts that pursuant to 42 U.S.C. § 1983, these Defendants deprived

C. Smith of his property without due process of law, in violation of  the Fourteenth Amendment,

by subjecting him to employment discipline under false pretenses.  The Defendants have moved

for dismissal or summary judgment on all three claims.

## II.  LEGAL STANDARDS

### A.  Standards For Dismissal

The Defendants seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that

"the Court lacks subject matter jurisdiction over the case because Plaintiffs' Complaint fails to

state any cognizable federal claims against these moving Defendants."  (Defendants' Motion at

1.)

At the outset, the Defendants confuse the provisions of Rule 12(b) with respect to the

federal claims.  Rule 12(b)(1) addresses the legal basis for the claims and permits motions to

dismiss for lack of subject matter jurisdiction.  "The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States."  28 U.S.C. § 1331.  The Plaintiffs assert Counts One, Two, and Three pursuant to 42

U.S.C. §§ 1983 and 1985.  These counts clearly arise under the Constitution and laws of the

United States.

What the Defendants substantively assert is that the allegations in these counts fail to

state a claim upon which relief can be granted.  The motion, therefore, should have been filed

pursuant to Rule 12(b)(6).  Rather than dismiss summarily on form over substance, the Court deems the motion to dismiss to be for failure to state a claim under Rule 12(b)(6).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are taken as true and viewed in the light most favorable to the Plaintiff.  A complaint will not be dismissed "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hiser v. City of Bowling Green, 42 F.3d 382, 383 (6th Cir. 1994), cert. denied, 514 U.S. 1120 (1995), quoting, Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio, 900 F.2d 882, 885 (6th Cir. 1990). The complaint need only give fair notice as to the claim and the grounds upon which it rests.  In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).

Conclusory  allegations, however, are not sufficient to state a claim.  Rather, a complaint must set forth specific facts which, if proven, would warrant the relief sought.  Sisk v. Levings, 868 F.2d 159, 161 (5th Cir. 1989).  In addition, a court is not bound to accept as true a legal conclusion couched as a factual allegation.  Papasan v. Allain, 478 U.S. 265, 286 (1986).  A court likewise need not accept unwarranted factual inferences.  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

B.  Standard For Summary Judgment

Alternatively, the Defendants seek summary judgment on Counts One, Two, and Three. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).

The party moving for summary judgment bears the initial burden of production under Rule 56.  The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The substantive law identifies which specific facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)).  However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S. at 247-48.

### III.  ANALYSIS

### A.  Count One – Conspiracy

In Count One, the Plaintiffs assert that the Defendants conspired to deprive them of their civil rights pursuant to 42 U.S.C. § 1985(3).  Section 1985(3) was enacted during Reconstruction

-6-

to provide a cause of action against participants in private conspiracies to deprive others of legal rights.  <u>Volunteer Medical Clinic, Inc. v. Operation Rescue</u>, 948 F.2d 218, 222 (6th Cir. 1991), <u>citing</u>, <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 101 (1971).

The elements of this cause of action are: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of equal protection under the laws; (3) an act in furtherance of the conspiracy; and (4) a resulting injury to person or property, or a deprivation of any right or privilege of a citizen of the United States. <u>Peters v. Fair</u>, 427 F.3d 1035, 1038 (6th Cir. 2005); <u>Collyer v. Darling</u>, 98 F.3d 211, 233 (6th Cir.), <u>cert. denied</u>, 520 U.S. 1267 (1997).  Significantly, because this type of conspiracy explicitly is grounded in the deprivation of equal protection, the conspiracy must have been motivated by racial or other class-based invidiously discriminatory animus.  <u>Peters</u>, 427 F.3d at 1038; <u>Collyer</u>, 98 F.3d at 233; <u>Wolotsky v. Huhn</u>, 960 F.2d 1331, 1338 (6th Cir. 1992).

The Defendants argue that this claim is dismissible because the Plaintiffs have not alleged any racial or other class-based animus in the Complaint.  The Court agrees.   The Sixth Circuit permits section 1985(3) claims only as to discrimination based on race or membership in "those so-called 'discreet and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics."  <u>McGee v. Schoolcraft Community College</u>, 167 Fed. Appx. 429, 435 (6th Cir. 2006), <u>quoting</u>, <u>Volunteer Medical Clinic, Inc. v. Operation Rescue</u>, 948 F.2d 218, 224 (6th Cir. 1991).  A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender.  <u>Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.</u>, 32 F.3d 989, 994 (6th Cir. 1994).

The Plaintiffs admittedly do not assert that they belong to any protected class based on race, ethnicity, gender, or any other inherent characteristic.  Their alleged "class" comprises those employees who exercised their First Amendment rights by complaining about the Defendants' hiring practices.  The Plaintiffs principally rely on Lapkin v. Taylor, 475 F. Supp. 446, 449-50 (D. Hawaii 1979), in which the court applied section 1985(3) to a group of employee "whistle blowers".  Recognizing the apparent deficiencies in the conspiracy claim, the Plaintiffs urge the expansion of Lapkin (which itself is not binding precedent on this Court) to classes of employees who exercise First Amendment rights when they  "criticize wasteful, ineffectual and unsafe hiring and promotion practices."  (Plaintiffs' Brief In Opposition, Docket No. 49, at 10.)

The Sixth Circuit has applied section 1985(3) to alleged First Amendment classes in very narrow circumstances.  Claims by such classes have been permitted only in the core political context, accepting supporters of a particular political candidate or view as a defined class. Conklin v. Lovely, 834, F.2d 543, 549 (6th Cir. 1987), citing, Cameron v. Brock, 473 F.2d 608, 610 (6th Cir. 1973).

This principle, however, has been rejected by the Sixth Circuit in the context of alleged employee "whistle blowers".  In Taylor v. Brighton Corp., 616 F.2d 256 (6th Cir. 1980), employees alleged that they were discharged in large part in retaliation for reports of OSHA safety violations of their employer.  The employees argued that those who would or did report such violations constituted a defined class under section 1985(3).  The court, however, rejected expansion of Cameron to employees who reported safety violations.  The distinction was that Cameron and like cases involved differences in belief in the broader political context, which

-8-

historically have been afforded high constitutional protection and equal treatment.  In contrast, those who reported safety violations were a group defined by conduct, not belief, and therefore not entitled to comparable protections under section 1985(3).  Taylor, 616 F.2d at 265-66.  Thus, the Sixth Circuit already has rejected the Lapkin analysis.

In addition, the Plaintiffs here are not true whistle blowers.  They did not complain about anything like an illegal safety violation.  They complained that a decision to hire J. Smith as a full-time deputy chief would have been ill-advised, but not illegal.  There is no basis to expand section 1985(3) so far.

For the foregoing reasons, Count One of the Complaint does not state a cognizable claim under 42 U.S.C. § 1985(3).  Accordingly, the Defendants' motion to dismiss is granted as to Count One.[1]

B.  First Amendment

In Count Two, the Plaintiffs assert that the Defendants deprived them of their constitutional rights under color of state law pursuant to 42 U.S.C. § 1983.  42 U.S.C. § 1983 provides a remedy for the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution or laws of the United States.[2]  The elements of a claim

---

[1]    Dismissal of Count One is based upon the insufficiency of the allegations in the Complaint pursuant to Rule 12(b)(6).  Discovery, therefore, is irrelevant, and the Plaintiffs thus are not entitled to discovery on this count pursuant to Rule 56(f).

[2]    42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

-9-

under section 1983 are: (1) the deprivation of a federal right, and (2) the deprivation was committed by one acting under color of state law.  West v. Adkins, 487 U.S. 42, 48 (1988); Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); United of Omaha Life Insurance Co. v. Solomon, 960 F.2d 31, 33 (6th Cir. 1992).

 The Plaintiffs claim that they were deprived of their First Amendment right to freedom of speech when the Defendants retaliated against them for successfully opposing J. Smith's appointment to full-time deputy fire chief.  The Plaintiffs must demonstrate the following three elements to establish a *prima facie* case for retaliation under the First Amendment: (1) they engaged in constitutionally protected speech; (2) they were subjected to some adverse action or deprived of some benefit; and (3) the protected speech was a substantial or motivating factor in the adverse action.  Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003); Rodgers v. Banks, 344 F.3d 587, 596 (6th Cir. 2003); Banks v. Wolfe County Board of Education, 330 F.3d 888, 892 (6th Cir. 2003); Sharp v. Lindsey, 285 F.3d 479, 484 (6th Cir. 2002).

 The Defendants argue that the first element is not satisfied because the Plaintiffs did not engage in protected speech.  For public employees like the Plaintiffs, speech is protected only when it involves matters of public interest or public concern.  Leary, 349 F.3d at 897, 899; Banks, 330 F.3d at 892; Collyer v. Darling, 98 F.3d 211, 229 (6th Cir. 1997).  Whether speech addresses matters of public concern is determined by considering the content, form, and context of a given statement, as revealed by the whole record.  Connick v. Myers, 461 U.S. 138, 147-48 (1983); Leary, 349 F.3d at 899; Rodgers, 344 F.3d at 596; Jackson v. Leighton, 168 F.3d 903,

---

    shall be liable to the party injured in an action at law, suit in equity, or
    other proper proceeding for redress.

-10-

910 (6th Cir. 1999).  In addition, whether speech addresses matters of public concern is a question of law.  Leary, 349 F.3d at 898; Banks, 330 F.3d at 892; Rahn v. Drake Center, Inc., 31 F.3d 407, 411 (6th Cir. 1994), cert. denied, 515 U.S. 1142 (1995).

Speech involves a matter of public concern when it relates to any matter of political, social, or other concern to the community.  This must be differentiated from matters of personal interest, especially individual employment grievances, which are not protected.  Connick, 461 U.S. at 146-47; Leary, 349 F.3d at 899; Rodgers, 344 F.3d at 596; Banks, 330 F.3d at 893; Sharp, 285 F.3d at 484.  Public matters include issues about which information is needed or appropriate to enable the public to make informed decisions about the operation of government. Leary, 349 F.3d at 899; Rodgers, 344 F.3d at 596; Banks, 330 F.3d at 893.  Whether speech involves matters of public concern is a content-based inquiry, and although the subjective motivation of the speaker is relevant, it is not controlling.  Banks, 330 F.3d at 894.

The content of the speech at issue favors the Plaintiffs.  The Court first looks to Plaintiff Deem-Rockstroh's letter of April 22, 2004.  On the letter's face, she opposed J. Smith's appointment for public safety reasons in that an unqualified deputy chief could be a danger to the community.  She implied that nepotism was occurring, when she wrote:  "This is not a volunteer position were [sic] you can appoint your buddy, who had no training or experience, to an officer's position."  She expressed the opinion that township money should "pay for the most experienced applicant who we can trust with our lives and property."  She urged a hiring that would be in the "best interest of the people." She signed the letter as "Tax Payer/Resident/Voter".

Plaintiff Deem-Rockstroh reiterated these concerns when she read the letter to the Board

-11-

of Trustees during a public meeting.  During that meeting, she further requested that the Board of Trustees make their hiring practices public, and she even offered a competing resume of someone she thought was qualified.  She spoke that the property and money of the township residents were at stake.  This content shows that the opposition to J. Smith's appointment was a matter of public concern.

The form and context of the speech also favor the Plaintiffs.  In addition to the letter, the Plaintiffs essentially lobbied the Board of Trustees and made statements at open meetings. Plaintiff C. Smith presented a petition signed by approximately forty of the seventy active firefighters, which also shows that the Plaintiffs' concerns were broader than themselves.

The Defendants argue that the Plaintiffs' complaints were private because Deem-Rockstroh's letter is characterized in the Complaint as a "private and confidential letter to the Board of Trustees".  (See Complaint at ¶ 39.)  The Defendants, however, read this statement from the Complaint out of context.  When viewed in the context of the entire record, the Plaintiffs merely did not intend initially to share their complaints with the general public, but instead chose to express their opposition to the Board of Trustees first.  This does not mean that the letter did not address matters of public concern.  It was reasonable for the Plaintiffs to complain to the Board of Trustees first as the governmental decision maker.  When the Board did not respond favorably, the Plaintiffs broadened their message to the general public, which included their petition drive and speaking at public meetings.  Viewing the record as a whole, the fact that the initial contact was made solely with the Board of Trustees, rather than the general public, does not mean their speech was restricted to private matters.

The Defendants also argue that the Plaintiffs' speech did not involve matters of public

concern because they complained about the misuse of public money.  Speech that concerns the spending of public money, *by itself*, is not sufficient to warrant protection because any complaint about public money theoretically could be deemed a matter of public concern.  Banks, 330 F.3d at 897; Jackson v. Leighton, 168 F.3d 903, 909-10 (6th Cir. 1999); Rahn, 31 F.3d at 412.  Here, however, the Plaintiffs' complaints went well beyond the use of public money, and included concerns over public safety and the efficacy of township hiring practices generally.  Accordingly, the Defendants' argument lacks merit.

The Defendants also argue that Deem-Rockstroh's speech expressed concern for the safety of her firefighter husband, and therefore involved private matters.  Again, the Defendants focus on only a single aspect of the speech, ignoring the broader form and context.  The mere fact that personal concerns also may have been included does not destroy the First Amendment protection.

The entirety of the employee's speech does not have to involve matters of public concern, so long as some portion does.  Connick, 461 U.S. at 149; Leary, 349 F.3d at 899-900; Rodgers, 344 F.3d at 597; Rahn, 31 F.3d at 411.  "Mixed speech", having both public and private aspects, can be protected.  Banks, 330 F.3d at 893, 895; Vaughn v. Lawrenceburg Power System, 269 F.3d 703, 716 (6th Cir. 2001); Bonnell v. Lorenzo, 241 F.3d 800, 812 (6th Cir.), cert. denied, 534 U.S. 951 (2001).  Even in a mixed speech case, the focus is on the content of the speech, and though the subjective motivations of the speaker may be relevant, they are not dispositive.  Vaughn, 269 F.3d at 716-17; Bonnell, 241 F.3d at 812.

Banks, cited several times above, is similar.  The plaintiff, a public school substitute teacher and instructional aid, complained about the defendant school board's hiring practices of

-13-

certified teachers.  She complained that the hiring methods violated state law, resulted in incompetent hires, and wasted public money.  The evidence revealed a clear personal motive behind her complaints, for she had been turned down several times for teaching positions. However, her speech was "mixed speech" of public and private concerns, and therefore had to be balanced against the school board's interests.  Banks, 330 F.3d at 897-98.

The current case is a similar "mixed speech" situation.  The Plaintiffs' certainly had personal interests at stake.  However, the alleged nepotism-like practice of promoting friends, the public safety concerns in having an unqualified full-time deputy chief, and the fiscal issues over whether a full-time deputy chief was cost-effective or necessary, render the Plaintiffs' speech "mixed" with a high degree of public concern.  Indeed, based on the overall content, the public concerns dominate over the private ones.

Once it is determined that the speech involves matters of public concern, such speech, in the context of public employees, still is not protected unless the employee's interest in addressing such public matters outweighs the employer's interest in promoting the efficiency of the public services it performs through the employees.  Pickering v. Board of Education of Township High School District 205, 391 U.S. 563, 568 (1968); United States v. National Treasury Employees Union, 513 U.S. 454, 466 (1995); Leary, 349 F.3d at 897, 899; Rodgers, 344 F.3d at 601; Cockrel v. Shelby County School District, 270 F.3d 1036, 1053 (6th Cir.), cert. denied, 537 U.S. 813 (2002); Jackson, 168 F.3d at 909-10; Rahn, 31 F.3d at 411.  When balancing these interests, the court considers various factors, including whether: (1) an employee's comments meaningfully interfere with the performance of the employee's own duties; (2) undermine a legitimate goal or mission of the employer; (3) create disharmony among

-14-

co-workers; (4) impair discipline by superiors; and (5) destroy the relationship of loyalty and trust required of confidential employees. Leary, 349 F.3d at 900; Rodgers, 344 F.3d at 596; Sharp, 285 F.3d at 486; Cockrel, 270 F.3d at 1053; Meyers v. City of Cincinnati, 934 F.2d 726, 730 (6th Cir. 1991). A court should consider the manner, time, and place of the employee's expression, as well as the context in which the dispute arose. Rodgers, 344 F.3d at 601.

The Court analyzes each Plaintiff separately. In actuality, Deem-Rockstroh's sole direct employment for Canton Township was as a grant writer. She was not a township firefighter. In addition, the ambulance services for which she worked are not entities of Canton Township, but only provide services pursuant to mutual aid agreements. Therefore, in analyzing the effect of her speech on her employment, the focus must be on her grant writing. The Defendants attempt to link her conduct with her husband's employment as a firefighter, but the Defendants cite no authority that a person's speech can be imputed to a spouse's employment in the analysis. There is no evidence that her complaints about the fire department's hiring practices had any effect on, or relevance to, her grant writing in connection with the five factors identified above.

C. Smith's analysis is more difficult. His role primarily was his involvement in the petition drive to enlist fellow firefighters to oppose J. Smith's appointment. The first two factors are whether his speech interfered with his own activities or undermined the goals and mission of the fire department. The Defendants present no evidence that C. Smith was unable to do his job because of his speech. Even looking at the incident for which he was disciplined, there is no evidence that his opposition to J. Smith resulted in inferior performance on that particular day. The Defendants themselves argue that this incident was too remote in time to be connected to his speech. More broadly, there likewise is no evidence that the fire department's goals or mission

-15-

were undermined.

The third and fourth factors are whether C. Smith's speech created disharmony among co-workers and impaired discipline by superiors.  Here, a petition drive by rank-and-file firefighters against a candidate for a supervisory position arguably meets these requirements.  However, it is not clear whether it was the Plaintiff's speech that would cause disharmony, or the Defendants' hiring practices.  Ultimately, the Board of Trustees agreed with the Plaintiffs and their supporters, and J. Smith was not appointed as full-time deputy chief.  (See Complaint at ¶¶ 45-46.)  The Board's decision lends credibility to the Plaintiffs' need, and the need of fellow firefighters, to speak out about the manner in which their department is run.  These factors, therefore, do not clearly favor either party.[3]

The manner, time, and place of the expression also favors the Plaintiffs.  There is no evidence that they ever disrupted the fire department.  Their most vocal expressions occurred in dealings with the Board of Trustees at public meetings, and not during their actual employment.  They also used methods typical of protected expression, including letters to government officials and a petition.  In addition, although sharply critical, there is no evidence that the Plaintiffs' expression ever rose to the level of being abusive or threatening.

Because the issue of whether the Plaintiffs engaged in protected speech is a question of law, the Court must balance their interest in addressing public matters against the Defendants' interest in promoting the efficiency of the fire department.  The Plaintiffs have demonstrated that the township's hiring practices with respect to senior officials of the fire department is a matter of substantial public concern and safety, and there is no evidence that the overall performance of

---

[3]      The fifth factor is not relevant here because it deals with confidential employees.

-16-

the fire department was undermined by the Plaintiffs' speech.  Accordingly, the Court concludes that the balance favors the Plaintiffs' right to speak, and thus the first element of a *prima facie* retaliation claim is satisfied.

The second element of a *prima facie* case for First Amendment retaliation is that the Plaintiffs were subjected to some adverse action or deprived of some benefit.  An "adverse employment action" is a materially adverse change in the terms and conditions of employment.  Smith v. City of Salem, Ohio, 378 F.3d 566, 575 (6th Cir. 2004).  Firings and suspensions qualify.  Id. at 575-76 (holding that a an allegation of a twenty-four hour suspension was sufficient to plead an adverse employment action).  Plaintiff Deem-Rockstroh alleges that she was fired from her grant writing job, and was so undermined in her positions at the ambulance services that she was forced to resign.  C. Smith alleges that he was subjected to disciplinary proceedings, which resulted in a one-shift suspension.  These clearly are adverse employment actions.

The third element of a *prima facie* case for First Amendment retaliation is that the protected speech was a substantial or motivating factor in the adverse action.  Under this element, an employee must link the speech in question with the adverse employment decision.  Cockrel, 270 F.3d at 1055.

In their motion, the Defendants only make a single independent argument on this issue.  They argue that C. Smith's disciplinary proceedings were too remote in time to be linked to the speech.  The time between the speech and the adverse action, though relevant, is not dispositive either way of whether the speech was a substantial or motivating factor.  See Singfield v. Akron Metropolitan Housing Authority, 389 F.3d 555, 563 (6th Cir. 2004); Rodgers, 344 F.3d at 603. C.

-17-

Smith's speech, which occurred in late April and into May of 2004, occurred almost four months prior to the incident for which he was disciplined.  When viewed in the context of this contentious situation, the four-month window is inconclusive.  Because the evidence at this stage must be viewed in the light most favorable to the Plaintiffs, the time span does not warrant summary judgment.

More generally, when the basis for the alleged adverse action is in issue, and resolution depends upon which party is believed, this issue is a question of fact not amenable to summary judgment.  Leary, 349 F.3d at 900.   The motivation behind a city's disciplinary action is a question of fact.  Meyers, 934 F.2d at 729.  Here, the parties provide opposing views of what occurred and the Defendants' motivations.  This element, therefore, is not amenable to summary judgment.  Relatedly, virtually no discovery has been taken from the Defendants on their conduct and motivations.  Such lack of discovery is the basis for the Plaintiffs' Supplemental Motion for additional discovery pursuant to Rule 56(f).  The Court agrees that this discovery is warranted.

In their reply, the individual Defendants argue for the first time that they cannot be liable for First Amendment retaliation because they did not have final authority over the Plaintiffs' employment status.  The Board of Trustees had such authority, so only the Board can be responsible.

The Court disagrees.  Actual authority over an employment decision is not the sole basis for a section 1983 claim.  A supervisory employee can be also liable under section 1983 if he or she encouraged, participated in, or at least authorized, approved, or knowingly acquiesced in unconstitutional conduct.  Leary, 349 F.3d at 903; Shehee v. Luttrell, 199 F.3d 295, 299 (6th Cir.

-18-

1999), cert. denied, 530 U.S. 1264 (2000). Leary is instructive. In the context of allegedly unconstitutional transfers of a teacher, the Sixth Circuit stated that the defendant could be liable if he *encouraged unconstitutional behavior generally*, acquiesced to others to whom he had delegated decision making responsibilities, or *encouraged others to transfer* teachers who spoke out against his policies. Comparable bases for liability are present against the Defendants here.

In the cases relied upon by the Defendants, the defendants at issue were not shown to have influenced employment decisions, and were being sued merely for their supervisory status. Here, however, the Defendants allegedly influenced the ultimate decision makers and manipulated proceedings, even with the use of false information and defamatory statements. If proven, such conduct constitutes participating in, approving, and/or encouraging unconstitutional conduct.

For the purposes of the current motions, the Plaintiffs have demonstrated a *prima facie* case of First Amendment retaliation. Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendants to show by a preponderance of the evidence that there were other reasons for the adverse actions, and the same would have resulted even if the plaintiff had not engaged in the protected speech. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977); Leary, 349 F.3d at 898; Rodgers, 344 F.3d at 602; Cockrel, 270 F.3d at 1056; Jackson, 168 F.3d at 909.

The Defendants do not even apply the burden shifting in their motion, instead relying on the previous arguments. Alternative justifications present issues of fact not amenable to summary judgment unless the evidence is so one-sided that one party must prevail as a matter of law. Leary, 349 F.3d at 898. This issue ordinarily is reserved for a jury or a court in its fact-finding

-19-

role.  Rodgers, 344 F.3d at 603; see also Cockrel, 270 F.3d at 1056-57.  As stated above, virtually no discovery has been taken from the Defendants as to their conduct or motivations.  Accordingly, the Defendants are not entitled to summary judgment, and the Plaintiffs are entitled to discovery on these issues pursuant to Fed. R. Civ. P. 56(f).

In conclusion, the Defendants' motion for summary judgment is denied as to Count Two on the ground that genuine issues of material fact exist regarding: (1) whether the Plaintiffs' speech was a substantial or motivating factor in the adverse employment actions against them, and (2) whether there were other reasons for the adverse actions, and the same would have resulted even if the Plaintiffs had not engaged in the protected speech.  The Plaintiffs are entitled to discovery on these issues pursuant to Rule 56(f).

C.  Due Process

In Count Three, Plaintiff C. Smith alleges that he was deprived of his property without due process of law pursuant to 42 U.S.C. § 1983.  The basis for the deprivation is the disciplinary proceedings that resulted in his one-shift suspension.

To demonstrate a violation of due process, C. Smith must show: (1) he was deprived of a constitutionally protected property interest, and (2) federal due process requirements were not observed.  See Logan v. Zimmerman Brush Co., 455 U.S. 422, 428-28 (1982); Christian v. Belcher, 888 F.2d 410, 416 (6th Cir. 1989).  "The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution."  Narumanchi v. Board of Trustees, 850 F.2d 70, 72 (2d Cir. 1988).  The existence of a protected property interest is a question of law.  Tarabishi v. McAlester Regional Hospital, 827 F.2d 648, 652 (10th Cir. 1987).

Property rights are not created by the Constitution, but rather derive from existing rules

-20-

or understandings that stem from some independent source, such as state law.  <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 538 (1985); <u>Board of Regents of State Colleges v. Roth,</u> 408 U.S. 564, 577 (1972); <u>Sharp v. Lindsey</u>, 285 F.3d 479, 487 (6th Cir. 2002); <u>Williams v. Commonwealth of Kentucky</u>, 24 F.3d 1526, 1537 (6th Cir.), <u>cert. denied</u>, 513 U.S. 947 (1994). "The hallmark of property . . . is an individual entitlement grounded in state law." <u>Logan</u>, 455 U.S. at 430, 102 S. Ct. at 1155.  There must be a clear and legitimate claim to the benefit.  <u>See Sanderson v. Village of Greenhills</u>, 726 F.2d 284, 286 (6th Cir. 1984).  Public employees who cannot be discharged or demoted without just cause have a property interest in their continued employment.  <u>Loudermill</u>, 470 U.S. at 538-39.

The Defendants do not dispute that C. Smith, as a public and union employee, has a property interest in his continued employment.  Rather, they argue that such property right is not invoked here because the punishment against him was *de minimis*.  In determining this issue, courts look not just to the weight of punishment, but the nature of the interest at stake.  Although the length and consequent severity of the deprivation are relevant, they are not decisive.  <u>Goss v. Lopez</u>, 419 U.S. 565, 575-76 (1975) (holding that a 10-day school suspension was not *de minimis*).  Although a short employment suspension could be regarded as *de minimis*, the duration is not the sole factor to consider.  <u>See Carter v. Western Reserve Psychiatric Habilitation Center</u>, 767 F.2d 270, 272 n. 1 (6th Cir. 1985) (holding that a two-day suspension was *de minimis* "under the facts of the instant case").  Short suspensions that can be classified as "routine" are *de minimis* and do not trigger due process requirements.  <u>Gillard v. Norris</u>, 857 F.2d 1095, 1098 (6th Cir. 1988) (holding that a three-day suspension was *de minimis*).

The Court agrees with the Defendants that C. Smith's suspension was *de minimis*.  His

suspension is comparable to those held *de minimis* by the Sixth Circuit in similar cases.

Accordingly, Count Three is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[4]

      D.  Qualified Immunity

The Defendants also argue that they are entitled to summary judgment on the basis of

qualified immunity.  Because of the rulings above, this argument is now only relevant as to

Count Two for First Amendment retaliation.

Government officials performing discretionary functions are shielded from liability

unless their conduct violates clearly established statutory or constitutional rights of which a

reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982);

Gardenhire v. Schubert, 205 F.3d 303, 310-11 (6th Cir. 2000); Chappel v. Montgomery County

Fire Protection District No.1, 131 F.3d 564, 573 (6th Cir. 1997); Pray v. City of Sandusky, 49

F.3d 1154, 1157 (6th Cir. 1995); Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir. 1988).

The Sixth Circuit applies a three-step analysis in determining whether a plaintiff has

overcome the defense of qualified immunity.  First, the Court determines whether, viewing the

evidence in the light most favorable to the plaintiff, he has shown that a constitutional violation

has occurred.  Second, the violation must have involved a clearly established constitutional right

of which a reasonable person would have known.  Third, the plaintiff must demonstrate that the

official's conduct was objectively unreasonable in light of the clearly established constitutional

rights.  Dean v. Byerley, 354 F.3d 540, 557 (6th Cir. 2004); Feathers v. Aey, 319 F.3d 843, 848

---

[4]      As with Count One, dismissal of Count Three is based upon the insufficiency of
the allegations in the Complaint pursuant to Rule 12(b)(6).  Discovery, therefore,
is irrelevant, and the Plaintiffs thus are not entitled to discovery on this count
pursuant to Rule 56(f).

(6th Cir. 2003); Flagner v. Wilkinson, 241 F.3d 475, 480-81 (6th Cir.), cert. denied, 534 U.S. 1071 (2001); Dickerson v. McClellan, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

The Court first determines whether the Plaintiffs satisfy the first and second prongs by showing that there occurred a violation of a clearly established constitutional right. To determine whether a right is "clearly established", the Court must first look to the decisions of the Supreme Court, and then to the decisions within the Sixth Circuit. The contours of the right must be sufficiently clear that a reasonable official would understand when his conduct violates the right. Ewolski v. City of Brunswick, 287 F.3d 492, 501 (6th Cir. 2002); Gardenhire v. Schubert, 205 F.3d 303, 311 (6th Cir. 2000); Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992).

It "has been settled that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). This principal extends to retaliation claims. Perry v. McGinnis, 209 F.3d 597, 604 (6th Cir. 2000). Accordingly, the Plaintiffs' asserted First Amendment rights are clearly established rights of which a reasonable person would have known. In addition, based on the analysis in Section III. B above, the Plaintiffs have raised genuine issues of material fact as to whether they were deprived of these rights. Accordingly, summary judgment cannot be granted on the first two prongs of qualified immunity.

Under the third prong to overcome qualified immunity, the Plaintiffs must demonstrate that the Defendants' conduct was unreasonable under the circumstances. With respect to Count Two, whether the Defendants acted reasonably depends upon whose version of the facts is accepted. The Plaintiffs essentially charge that the Defendants engaged in a smear campaign

-23-

against them because they opposed J. Smith's appointment.  The Defendants allegedly made false statements and engaged in other misconduct in dealing with various city officials, the Plaintiffs' employers, and the media in an intentional scheme to harm the Plaintiffs.  The Defendants deny the charges.

The existence of qualified immunity ordinarily is a question of law, <u>Chappel</u>, 131 F.3d at 573, and the Plaintiffs bear the ultimate burden of proof that the Defendants are not entitled to qualified immunity.  <u>Gardenhire</u>, 205 F.3d at 311; <u>Pray</u>, 49 F.3d at 1158.  Summary judgment, however, is not appropriate when a genuine issue of material fact exists on a question on which the immunity turns.  <u>Gardenhire</u>, 205 F.3d at 311; <u>Dickerson</u>, 101 F.3d at 1158.   A jury becomes the final arbiter of an immunity claim when resolution of the issue depends upon which view of the facts is accepted.  <u>Pray</u>, 49 F.3d at 1161; <u>Adams v. Metiva</u>, 31 F.3d 375, 387 (6th Cir. 1994). Because of the factually different versions of events, summary judgment is not appropriate on the defense of qualified immunity.  A jury must choose between the two conflicting accounts.[5]

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Defendants'  Combined Motion To Dismiss and Motion For Partial Summary Judgment (Docket No. 39) is GRANTED IN PART and DENIED IN PART.  The motion is granted as to Counts One and Three pursuant to Fed. R. Civ. P. 12(b)(6). The  Complaint does not state a cognizable claim under 42 U.S.C. § 1985(3), and C. Smith's alleged property right is *de minimis* and thus does not trigger federal due process concerns.

---

[5]     When, as here, a court denies summary judgment on qualified immunity because of a dispute on the underlying factual issues relevant thereto, there is no right to an immediate appeal.  <u>Johnson v. Jones</u>, 515 U.S. 304, 307, 319-20 (1995); <u>Behrens v. Pelletier</u>, 516 U.S. 299, 313 (1996).

The motion is denied as to Count Two because genuine issues of material fact exist as to the following issues:  (1) whether the Plaintiffs' protected speech was a substantial or motivating factor in the adverse employment actions against them; (2) whether there were other reasons for the adverse actions, and the same would have resulted even if the Plaintiffs had not engaged in the  protected speech; and (3) whether the Defendants are entitled to qualified immunity because they acted reasonably, or whether, as alleged by the Plaintiffs, the Defendants made false statements and engaged in other misconduct in dealing with various city officials, the Plaintiffs' employers, and the media in an intentional scheme to harm the Plaintiffs.

In addition, the Plaintiffs' Supplemental Motion for additional discovery pursuant to Fed. R. Civ. P. 56(f) (Docket No. 60) is GRANTED IN PART.  The Plaintiffs are entitled to take additional discovery on Count Two.[6]

IT IS SO ORDERED.


Issued: September 29, 2006                          ___s/ John R. Adams_____
                                                                     UNITED STATES DISTRICT JUDGE

---

[6]         Following discovery, the Defendants may file renewed motions for summary judgment if appropriate.  The Court cautions, however, that these issues are highly fact-based, and additional motions should not be filed if resolution depends upon which party's version of events is to be believed by the fact finder.  The Court would view renewed motions in that context as frivolous.

-25-